Filed 2/25/14

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058521 |
| v. | (Super.Ct.No. FSB1205275) |
| ROBERT WAYNE HARRIS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. William Jefferson Powell IV, Judge. Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Parag Agrawal, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Robert Harris guilty of first degree burglary (Pen. Code, §§ 459, 460 subd. (a); Count 1)[1] with the enhancement that a person other than an accomplice was present in the residence (§667.5, subd. (c)(21)).[2] The special allegation rendered the burglary a violent felony. The trial court sentenced defendant to the middle term of four years in state prison.

Defendant concedes first degree burglary but contends that no other person was present because the unoccupied guest area he entered does not provide access to the occupied main residence. Finding the argument unpersuasive, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

The victim was awakened shortly before midnight by the familiar creaking sound of his screen door being opened. The victim's wife, who was lying awake, also recognized and reacted to the sound. The victims had their bedroom window open to get a breeze and could easily hear the door, which was about three feet away. Their bed was oriented such that their heads were under the window; they could see the intruder from their bed.

The screen door led to a converted garage used by the victims as a guestroom, containing "a bed, couch, and washroom." The victim saw the intruder standing approximately two feet into the room, but scared him away by telling his wife, "Hand me

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The enhancement statute defines a "violent felony" as including "[a]ny burglary of the first degree, as defined in subdivision (a) of section 460, wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." (§ 667.5, subd. (c)(21).)

the gun." The victim's wife then went to the kitchen to call 911. After the police arrived, defendant was located in bushes near the victims' residence; he was arrested. At trial, defendant disputed the reliability of his identification by the victim as the intruder.

## DISCUSSION

Defendant contends the evidence presented at trial was insufficient to support the jury's finding he committed first degree burglary with a person present. After the conclusion of the People's case, defendant moved to dismiss the special allegation, arguing there was no evidence the guesthouse itself was occupied and no evidence the main house could be accessed from the guesthouse. The trial court denied the motion.

Defendant presents the question as a lack of substantial evidence; however, his argument is that the undisputed evidence is insufficient as a matter of law to support the enhancement pursuant to section 667.5, subdivision (c)(21). The legal sufficiency of undisputed evidence to support a conviction is a question of law, which we review de novo. (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 315, fn.3; *People v. Groat* (1993) 19 Cal.App.4th 1228, 1231.) The fact the victims were present in their bedroom is not disputed, and neither is the sufficiency of the evidence supporting the burglary conviction. Only the legal issue of whether the victims' presence satisfied the burglary special circumstance is contested.

The record refers to the burglarized room in a variety of ways. The victim's testimony described the room as a "part of [his] house," and a room "for people to stay," "a guest room." He also referred to it as "not just part of the house," "[b]ecause . . . you cannot go through the house into that room from indoors." The victim's wife referred to

3

it as both a "guest house" and a "guest room." During her 911 call, the victim's wife stated the intruder entered "the side door that would lead to the house," and "the garage that's . . . in the house is a guest room. That's normally where my husband and I stay." Although matters such as habitability are viewed through the eyes of the persons with a possessory right to the dwelling (*People v. Aguilar* (2010) 181 Cal.App.4th 966, 970; *United States v. Lavender* (4th Cir. 1979) 602 F.2d 639, 641), the words used by the victims to describe the room, however, do not determine whether it is part of the residence.

A structure is part of a dwelling if it is functionally interconnected with and immediately contiguous to other portions of the house. (*People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1107.) A functionally interconnected structure is one used in related or complementary ways, and a contiguous structure must be adjoining or nearby. (*Ibid*.) In the instant case, the guest quarters were physically attached to the main residence, were covered by the same roof, and had been used on occasion by the victims as their bedroom. The room lacked cooking facilities, which made it dependent upon the rest of the house. In construction and use, the guestroom was a part of the main residence.

There was no direct access from the victims' guestroom to the main house; they shared an internal wall but no interior door connected them. Defendant asserts that this means, at most, that he burglarized an inhabited dwelling, but he did not enter a residence where a person was present. Defendant cites *People v. Singleton* (2007) 155 Cal.App.4th 1332 (*Singleton*) for the proposition that the mere presence of another person beneath the same roof does not satisfy the requirement of the special circumstance where there is no

4

way for that person to access the main residence without exiting the building.  Because an unbroken interior wall separated the two areas, defendant contends they are like separate units in an apartment house.

*Singleton* concerned the burglary of an apartment where the unit's occupant was present in the common area hallway of the building, but was not in the unit.  The victim waited outside his apartment watching to see if an ex-roommate would emerge with stolen items.  (*Singleton*, *supra*, 155 Cal.App.4th at p. 1336.)  Although the victim was underneath the roof that covered his home, he was held not to be present in the residence.  (*Id*. at p. 1339.)  *Singleton* is not persuasive; the victim was in a common area, not within the area of his exclusive tenancy and control.  Here, unlike in *Singleton*, there was no failure by the victims to "cross[] the threshold or otherwise pass[] within the outer walls of the house, apartment, or dwelling place being burglarized."  (*Id*. at p. 1337.)  The victims were present in their residence.  The existence of an interior separating wall does not place them "outside" of their home.

There is no requirement of an interior connecting door before a room such as a garage may be treated as part of a residence.  A garage sharing a roof and a wall with a residence is part of an inhabited dwelling even though there is no interior access.  "Simple logic would suffer were we to leap over this interrelationship to a conclusion that a garage is not part of a dwelling because no inside entrance connects the two."  (*People v. Moreno* (1984) 158 Cal.App.3d 109, 112.)  This is true even for multi-unit structures.  (*People v. Eduardo V*. (1999) 70 Cal.App.4th 591, 594.)

The victims were present in their home when defendant burglarized their guestroom. Although they had some protection from immediate danger because of the lack of an interior connecting door, there was an intruder in their home who had entered their dwelling just feet from where they slept. At that point the victims had to choose between submitting to the crime or taking the risk of a violent confrontation in their home.

"'Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety.'" (*People v. Gauze* (1975) 15 Cal.3d 709, 715, quoting *People v. Lewis* (1969) 274 Cal.App.2d 912, 920.) The risks arising from burglary are greater when a resident is present, as here, justifying the additional sanctions found in section 667.5, subdivision (c)(21).

Defendant argues that *Singleton*, *supra*, holds that "residence" cannot be equated with the term "inhabited dwelling house," which has a broader meaning, and that he posed the same degree of threat to the victims whether he was in their guest quarters or just outside their bedroom window. As noted *ante*, the distinctions material in *Singleton* are not present here. The residents were within the "outer walls" that enclosed the garage whether or not there was an interior connecting door. Likewise, defendant's view of the

6

victims' proper level of response to his guestroom burglary is not dispositive: the law states that a burglary committed while a person is present in the residence is a particularly serious crime.

Because we conclude that the privacy and safety interests involved in the sentence enhancement for burglary of an occupied residence extend to rooms that do not offer direct access but adjoin, share a common roof, and are functionally connected, we affirm imposition of the sentencing enhancement under section 667.5, subd. (c)(21), finding that the burglary took place with a person other than an accomplice present.

## DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION


MILLER _____
                                                                                          J.


We concur:


McKINSTER _____
                    Acting P. J.


RICHLI _____
                    J.


7